[Cite as *Dineen v. Pelfrey*, 2022-Ohio-2035.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Patrick Dineen, M.D., | : | |
| Plaintiff-Appellant, | : | No. 21AP-547 |
| | | (C.P.C. No. 20CV-5317) |
| v. | : | |
| Dorothea Pelfrey, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on June 16, 2022

**On brief:** *Henderson Mokhtari & Weatherly, Al A. Mokhtari*, for appellant. **Argued:** *Al A. Mokhtari.*

**On brief:** *Ritzler, Coughlin & Paglia, Jonathon M. Angarola*, for appellee. **Argued:** *Jonathon M. Angarola.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Patrick Dineen, M.D., appeals a judgment entered by the Franklin County Court of Common Pleas granting two motions to compel filed by defendant-appellee, Dorothea Pelfrey, ordering appellant to sign authorizations for release of medical and billing records, and denying appellant's motions to strike, for a protective order, and for sanctions. For the following reasons, we reverse the trial court judgment and remand the matter for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Following an August 2018 motor vehicle accident involving appellant and appellee, appellant and his wife filed a complaint in August 2020 asserting claims of

negligence, uninsured/underinsured motorist and medical coverage, subrogation, and loss of consortium. Appellant alleged in his complaint that,

> [a]s a direct result of the crash, Plaintiff may have suffered significant injuries and/or an aggravation of pre-existing injuries to his body, causing physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment and/or an inability to perform ordinary activities, which injuries may be permanent, as well as miscellaneous unreimbursed costs, expenses and losses.

(Compl. at 3.) On October 2, 2020, appellee filed an answer and served her first set of combined interrogatories and requests for production of documents on appellant. The interrogatories included multiple questions about diagnosis and treatment provided by medical practitioners, physicians, surgeons, and psychologists, and the documents requested by appellee included copies of "all hospital and medical records relating to the treatment received by [appellant]" and "copies of any reports [all medical professionals] have prepared to date." (Oct. 2, 2020 Interrogs. and Req. for Produc. of Docs. at 10.)

{¶ 3} Appellant did not respond to the first set of interrogatories. Appellant did authorize certain medical providers (Physical Medical Associates, Columbus Internal Medicine, OhioHealth Riverside Radiology, and McConnell Heart Health Center) to release to appellee's lawyer medical treatment and billing records spanning August 28, 2018 (the accident) through August 2020. The parties then scheduled depositions for June 30, 2021.

{¶ 4} During appellant's deposition, appellant's counsel instructed appellant not to answer several questions, including: his hospitalizations over the past ten years excluding treatment for this accident; any emergency room or urgent care treatment he sought in the past ten years excluding treatment for this accident; any orthopedist treatment he sought in the last ten years excluding treatment for this accident; any pain management treatment he sought in the last ten years excluding treatment for this accident; any orthopedist treatment he sought in the last ten years excluding treatment for this accident; and what prescription medication he was on at the time of this accident. Appellant's counsel also instructed appellant not to answer questions about the circumstances surrounding a car accident in the early 1990's and whether he had been treated after that accident; whether he had been involved in any other motor vehicle accidents, prior to ten years before the deposition, aside from the instant accident and the accident in the 1990's; whether he had

filed a claim for disability prior to ten years before the deposition; whether he had filed for bankruptcy prior to five years before the deposition; and whether he had consumed alcohol within 24 hours of the accident. During the deposition, appellant testified he believed his "neck and initially part of [his] upper back" were injured in the accident, and appellant's counsel did allow inquiry into appellant's prior neck treatment during the past ten years. (Dineen Dep. at 37.)

{¶ 5} Shortly after the depositions, appellee filed a motion to compel appellant's participation in a second deposition. Within it, appellee explained that while appellant "claims he sustained a neck injury in this accident and first sought medical treatment after this accident on September 20, 2018," appellee disputed proximate cause of the asserted injury and damages. (July 2, 2021 Mot. to Compel at 1.) Appellee argued that appellant's "recent medical history, his involvement in other court proceedings, his involvement in other motor vehicle accidents, and his state of mind at the time of this accident" were relevant "to whether the motor vehicle accident at issue proximately caused his neck injury." (July 2, 2021 Mot. to Compel at 3.)

{¶ 6} Appellee additionally filed a motion to compel appellant to respond to appellee's written discovery requests and sign medical authorizations. Specifically, appellee asserted appellant had not responded to appellee's October 2, 2020 written discovery requests, including a set of interrogatories and production of documents, or appellee's July 9, 2021 request for authorizations to release medical records related to information gained in appellant's deposition.[1]

{¶ 7} Appellant filed a combined memorandum contra appellee's motions to compel, a motion to strike, a motion for a protective order, and a motion for sanctions. Within it, appellant argued the discovery deadline had passed, the "discovery each party actually needs for trial [had] already been completed," that appellee was only entitled to discovery of matter causally and historically related to the injuries at issue, and that appellee fabricated a discovery dispute to improperly delay the case. (July 16, 2021 Memo. Contra at 2.) Appellee filed a reply contending the parties rescheduled the deposition to accommodate appellant's dog's health issues, and that appellant further caused delay by

---

[1] The requests for authorization do not appear in the appellate record. Neither party raises an issue on appeal based on the absence of these documents from the record.

not responding to discovery requests or answering questions in the deposition. Appellee filed motions in limine to exclude expert medical testimony, permanent damages, evidence of insurance, and certain billing records unrelated to the accident. Appellant opposed those motions.

{¶ 8} On October 11, 2021, the trial court filed an entry granting appellee's motions to compel a second deposition and to compel responses to written discovery and denying appellant's motions to strike, for a protective order, and for sanctions. According to the trial court, "[t]o this day, [appellant] has not responded to the written discovery and has not signed the authorizations to release medical and billing records from the providers with whom he obtained treatment after the accident" as discussed by appellant in his deposition. (Trial Court Entry at 2.) The trial court found that "the information requested in [appellee's] discovery requests is discoverable and that the discovery responses are necessary for [appellee] to thoroughly evaluate [appellant's] claims, prepare a proper defense, and conduct meaningful additional discovery. The need to conduct additional discovery can only be determined after reviewing [appellant's] outstanding overdue discovery responses, which further supports granting [appellee's] Motion to Compel." (Trial Court Entry at 2-3.)

{¶ 9} In conjunction with granting appellee's motions to compel, the trial court ordered appellant to, within 14 days of the order, serve his answers to appellant's first set of interrogatories and request for production of documents, sign and return the authorizations for release of medical and billing records, and make himself available for a second deposition. The trial court warned that appellant's failure to comply with the orders could result in sanctions including dismissal of appellant's claims.

{¶ 10} Appellant filed a timely appeal. Appellee filed a motion to dismiss the appeal, arguing appellant sought interlocutory relief that is not final and appealable pursuant to R.C. 2505.02(B)(4). By entry, this court indicated appellee's motion to dismiss would be determined when we considered the merits of the appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 11} Appellant assigns three assignments of error for review:

 I. THE TRIAL COURT ERRED IN DENYING APPELLLANT'S MOTION FOR PROTECTIVE ORDER

II.     THE TRIAL COURT ERRED IN GRANTING
        APPELLEE'S MOTION TO COMPEL A SECOND
        DEPOSITION OF APPELLANT

III.    THE TRIAL COURT ERRED IN GRANTING
        APPELLEE'S MOTION TO COMPEL WRITTEN
        DISCOVERY RESPONSES AND SIGNED MEDICAL
        AUTHORIZATIONS

## III.   ANALYSIS

{¶ 12} We first consider whether the trial court's October 11, 2021 entry constitutes a final, appealable order. In her motion to dismiss, appellee contends that the entry appealed in this case is an interlocutory order not subject to review at this time under R.C. 2505.02(B)(4).

{¶ 13} Generally, discovery orders are not subject to immediate appeal. *In re Special Grand Jury Investigation*, 10th Dist. No. 17AP-446, 2018-Ohio-760, ¶ 7. "However, an order compelling discovery of information alleged to be privileged or protected may be final and appealable if certain requirements of R.C. 2505.02 are met." *Id*. Whether a discovery order that compels discovery of information alleged to be privileged or protected warrants an interlocutory appeal is evaluated on a case-by-case basis. *State v. Glenn,* 165 Ohio St.3d 432, 2021-Ohio-3369, ¶ 28.

{¶ 14} R.C. 2505.02(A)(3) and (B)(4) provide a framework for analyzing whether an order pertaining to information claimed to be privileged may be reviewed on appeal. Under R.C. 2505.02(A)(3), a "provisional remedy" means "a proceeding ancillary to an action" including "discovery of privileged matter." R.C. 2505.02(B)(4) then provides:

> [a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> * * *
>
> An order that grants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶ 15} The appellant has the "burden of establishing the appellate court's jurisdiction over an interlocutory appeal." *Glenn* at ¶ 22, citing *Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, ¶ 8. The appellant "must establish not only that he has a colorable claim that the order compels the disclosure of [information subject to a privilege] but also that any harm from its disclosure could not be remedied on appeal from a final judgment." *Glenn* at ¶ 22. *In re Special Grand Jury Investigation* at ¶ 11 ("[A] party attempting to appeal an order compelling discovery of privileged materials must affirmatively establish that an immediate appeal is necessary to afford the appellant a meaningful and effective remedy.").

{¶ 16} In this case, the order at issue in part directs appellant to disclose information he claims is protected by the physician-patient privilege. The trial court found, without reserve, the information requested in appellee's discovery requests (including diagnosis and treatment by medical professionals) to be discoverable, ordered appellant to sign and return the authorizations for release of medical records, and threatened sanctions for the failure to do so. In his brief on appeal, appellant argues orders compelling disclosure of information concerning physician-patient confidentiality, privileged under R.C. 2317.02(B), constitute an exception warranting appellate review at this juncture. In further briefing concerning the motion to dismiss, appellant argued the trial court in essence permitted a "blanket" order into confidential and privileged information that, once disclosed, could not be undone. (Dec. 13, 2021 Memo. Contra. Mot. to Dismiss at 18.)

{¶ 17} In similar circumstances to this case, this court has held "that a trial court order compelling disclosure of information concerning physician-patient confidentiality constitutes a final, appealable order." *Mason v. Booker*, 185 Ohio App.3d 19, 2009-Ohio-6198, ¶ 11 (10th Dist.), citing *Talvan v. Siegel*, 80 Ohio App.3d 781, 784 (1992). *See, e.g.*, *Gentile v. Duncan*, 2013-Ohio-5540, 5 N.E.3d 100, ¶ 8 (10th Dist.) (concluding trial court's order granting appellee's motion to compel appellant to execute medical release authorizations was a final, appealable order); *Randall v. Cantwell Mach. Co.*, 10th Dist. No. 12AP-786, 2013-Ohio-2744, ¶ 8 (concluding, "to the extent that the decision orders appellant to grant an unaltered medical release that could lead to the production of privileged information and denies a protective order related to that information, it is a final, appealable order.").

**{¶ 18}** Appellee asserts that we should not rely on *Mason* since it was decided prior to the Supreme Court of Ohio decision in *Chen*.  However, we do not find *Chen* controls this case as it did not address physician-patient privilege.  Specifically, *Chen* concerned a trial court order compelling the appellants to turn over a surveillance video that the appellants contended was attorney-work product.  Within that context, the Supreme Court found the appellants failed to establish why an immediate appeal was necessary in that case.  The Supreme Court has since commented that the holding in *Chen* is limited to the context of "discovery protections that do not involve common-law, constitutional, or statutory guarantees of confidentiality, such as the attorney-work-product doctrine" and distinguished the protection provided by the attorney-work-product doctrine from the protection provided by an asserted privilege.  *See, e.g., Burnham v. Cleveland Clinic*, 151 Ohio St.3d 356, 2016-Ohio-8000, ¶ 2 (lead opinion) (remarking that, as opposed to attorney work-product, "an order requiring the production of information protected by the attorney-client privilege causes harm and prejudice that inherently cannot be meaningfully or effectively remedied by a later appeal"); *In re Grand Jury Proceeding of Doe*, 150 Ohio St.3d 398, 2016-Ohio-8001, ¶ 22 ("When a party is compelled to produce material protected by the attorney-client privilege, harm extends beyond the actual case being litigated and causes the loss of a right that cannot be rectified by a later appeal, and R.C. 2505.02(B)(4)(b) is accordingly satisfied"); *State ex rel. Thomas v. McGinty*, 164 Ohio St.3d 167, 2020-Ohio-5452, ¶ 47, quoting *In re Grand Jury Proceeding of Doe* at ¶ 22 ("In the context of an order to disclose materials protected by the attorney-client privilege, there is 'the loss of a right that cannot be rectified by a later appeal.' ").  *See generally In re Special Grand Jury Investigation of Medicaid Fraud & Nursing Homes*, 10th Dist. No. 18AP-730, 2019-Ohio-2532, ¶ 23 (detailing the leading cases emanating from the Supreme Court on this issue).

**{¶ 19}** Therefore, we do not find *Chen* determines this case and instead apply this court's precedent as stated in *Mason*, *Gentile*, and *Randall*.  Doing so, we similarly conclude that the October 11, 2021, order at issue in this case is final and appealable under R.C. 2505.02 to the extent it requires disclosure of information protected by the physician-

patient privilege.[2] *Randall* at ¶ 8. Considering all the above, we deny appellee's motion to dismiss and limit our review to only those issues concerning appellant's assertion of the physician-patient privilege.

{¶ 20} Appellant's assignments of error challenge the trial court's decision to deny his motion for a protective order and grant appellant's motions to compel. Because appellant's assignments of error all concern discovery of allegedly privileged information and are interrelated, we will address them together. *Gentile* at ¶ 8. Trial court orders concerning discovery, including protective orders, are generally reviewed under an abuse-of-discretion standard. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13; *Randall* at ¶ 11. However, "[w]hether the information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo." *Schlotterer* at ¶ 13.

{¶ 21} Generally, "[u]nless otherwise limited by court order, * * * [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Civ.R. 26(B)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "When information subject to discovery is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Civ.R. 26(B)(8). "Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Civ.R. 26(C) (addressing protective orders).

{¶ 22} R.C. 2317.02(B) sets forth the "physician-patient privilege" and waiver of that privilege. *Gentile* at ¶ 16. "Medical records are generally privileged from disclosure" under R.C. 2317.02(B). *Schlotterer* at ¶ 14. R.C. 2317.02(B)(1) and (5)(a). However, "[t]he physician-patient privilege * * * is not absolute." *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, ¶ 22. "[T]he privilege does not apply when the patient gives

---

[2] We agree with appellee that "[a]ppellant['s] citation to physician-patient privilege under R.C. 2317.02(B)(3) has no bearing on [a]ppellant['s] refusal to respond to written discovery at all and [appellant's] refusal to answer" questions in his deposition "based on relevancy alone" unconnected to an assertion of physician-patient privilege. (Appellee's Mot. to Dismiss at 3.)

express consent to the release of medical information or when the patient places his medical condition in issue by filing a medical claim or wrongful-death action." *Id. Friedenberg v. Friedenberg*, 161 Ohio St.3d 98, 2020-Ohio-3345, ¶ 33 ("R.C. 2317.02(B)(1)(a)(iii) * * * expressly provides that the patient waives the physician-patient privilege in civil actions filed by the patient."). When the physician-patient privilege described in R.C. 2317.02(B)(1) does not apply, the communication must be "related causally or historically to physical or mental injuries that are relevant to issues" in the civil action. R.C. 2317.02(B)(3)(a); *Leopold v. Ace Doran Hauling & Rigging Co.*, 136 Ohio St.3d 257, 2013-Ohio-3107, ¶ 18; *Mason* at ¶ 14 ("[U]nder [R.C. 2317.02(B)] the filing of any civil action waives the physician-patient privilege as to any communication (including a medical record) that relates causally and historically to the injuries at issue in the action."). "The burden of showing that the privilege applies rests on the party asserting the privilege." *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 234.

{¶ 23} Here, appellant contends he testified in deposition that he sustained a neck injury as a result of this crash and that he had no prior neck "injury, issue, symptom, or * * * treatment" during the ten years before the motor vehicle accident. (Appellant's Brief at 15.) In appellant's view, the information the trial court ordered him to produce via written discovery, medical authorizations and a second deposition is both incumbent upon medical diagnosis and treatment and is not causally or historically related to the motor vehicle accident or the injuries he sustained in the accident. Appellant believes the trial court, by failing to set proper limits, has effectively permitted "an unmitigated fishing expedition" into appellee's confidential medical history. (Appellant's Brief at 15.)

{¶ 24} Appellee counters that appellant was required to answer questions during his deposition requesting non-privileged information and, under *Vega v. Tivurcio*, 10th Dist. No. 14AP-327, 2014-Ohio-4588, ¶ 29, could not refuse to do so based on relevancy. Appellee also contends appellant failed to meet his burden of showing privilege since he did not specify how the information requested is privileged, akin to *Pietrangelo v. Hudson*, 8th Dist. No. 107344, 2019-Ohio-1988 citing Civ.R. 26(B)(8)(a) and *Heimberger v. Heimberger*, 11th Dist. No. 2019-L-139, 2020-Ohio-3853, ¶ 29.

{¶ 25} The cases raised by appellee are distinguishable. *Vega* concerned the plaintiff's right to assert her Fifth Amendment privilege at a pre-trial deposition. We found

no error in the trial court's order granting appellee's motion to compel where the plaintiff failed, under case law specific to the Fifth Amendment privilege, to show that she had reasonable cause to apprehend a real danger of incrimination if she were to respond to the questions raised in the motion to compel. Because *Vega* does not involve standards and analysis pertaining to the assertion of the physician-patient privilege, we decline to apply it here.

{¶ 26} The two Eighth District cases, *Heimberger* and *Pietrangelo*, also diverge from this case in ways that undercut a direct comparison. In *Heimberger*, the Eighth District held the trial court did not abuse its discretion in compelling discovery considering the discovery requests at issue in that case. The court found all of the discovery requests except one related causally or historically to the physical and/or mental injuries alleged by the plaintiff since they included appropriate time parameters, and the one outlier seeking information for medical care "at any time" to nevertheless not violate the privilege since it only asked for names and contact information of doctors. *Id*. at ¶ 26-27. While the Eighth District also commented that the plaintiff did not comply with civil rules with respect to her assertion of privilege, it did so as an add-on "note" without further elaboration. *Id*. at ¶ 29. Moreover, the plaintiff in *Heimberger*, unlike the instant case, did not seek a protective order pertaining to medical records.

{¶ 27} In *Pietrangelo*, the plaintiff brought a negligence action against the defendant alleging injuries to his head, neck, and back. "After learning that [the plaintiff] had previously suffered injuries to the same areas for which he now claimed harm, [the defendant] sought [the plaintiff's] prior medical records" and the plaintiff refused to sign the release authorizations. *Id*. at ¶ 1. The plaintiff refused to comply without seeking a protective order or any other means to protect asserted privileged information. The Eighth District found the plaintiff had failed to articulate a factual basis by which the trial court could have concluded that a record was not properly discoverable and had not demonstrated the trial court erred in granting his motion to compel.

{¶ 28} Notably, *Pietrangelo* at ¶ 23 distinguishes itself from its earlier case, *Wooten v. Westfield Ins. Co.*, 181 Ohio App.3d 59, 2009-Ohio-494 (8th Dist.), in which the Eighth District reversed and remanded a trial court's denial of a plaintiff's motion for a protective order where the defendant's request for the medical information was "a blanket one,"

seeking all of appellant's medical and pharmaceutical records, with only a time limitation and "the authorizations were not limited * * * to the alleged injuries." *Wooten* at ¶ 15. The *Wooten* court concluded in these circumstances the defendant's request was too broad and remanded the matter to the trial court to determine which medical records were discoverable. *Id.* at ¶ 21.

{¶ 29} In the instant case, unlike *Pietrangelo*, appellant did not testify to having previous injuries to the same areas for which he now claimed harm (the neck injury), the information sought is not constrained to the claimed injury, and appellant did seek a protective order. These circumstances are more aligned with *Wooten*, where the trial court improperly issued a "blanket" order to compel production of medical information and denied the plaintiff's motion for a protective order.

{¶ 30} Similar to *Wooten*, this court has determined that a trial court errs in ordering broad access to a plaintiff's medical information without considering, upon request, whether the requested records are causally and historically related to the injuries at issue and without determining whether confidential and privileged information may need protected. *See e.g., Mason* at ¶ 22 ("We acknowledge that there are many methods for obtaining medical records and determining their relevance before requiring their disclosure in discovery. * * * A trial court may not, however, simply ignore the requirements of R.C. 2317.02(B)."); *Randall* at ¶ 15 (concluding, in a case where some requested records sought in discovery may have included communications regarding unrelated conditions, the trial court erred by not granting the plaintiff's motion for a protective order "or implementing some other measure * * * to determine whether certain records were privileged"); *Gentile* at ¶ 24 (citing *Mason*, *Wooten*, and *Randall* in holding that "a trial court errs in ordering a plaintiff to execute 'general medical records release authorizations' that are not tailored to physical or mental injuries relevant to the issues in the case" and that a "trial court should take measures to ensure that privileged medical records are protected from disclosure.").

{¶ 31} Here, the parties agree the case has narrowed to appellant's assertion of a neck injury allegedly caused by the parties' motor vehicle accident. Nevertheless, the trial court summarily found all the information requested in appellee's discovery requests to be discoverable without considering the appropriate timeframe for discovery or imposing any

other limitation, even though those requests included questions admittedly concerning the diagnosis and treatment of "any condition" and medical diagnosis and treatment "not involving this accident." (First Set of Interrogs. at 2; Appellee's Mot. to Compel Second Dep. at 1-2.) Moreover, the trial court denied appellant's motion for a protective order and did so without explanation. Considering the parties' agreement of the (now narrowed) injury at issue in this case and the extensive scope of appellee's discovery requests, we agree with appellant that the trial court erred by ordering broad, unprotected access to his medical information. While appellant waived the physician-patient privilege by filing his civil action, he only did so as to communications that are causally or historically related to the injuries presented in the civil action, and a trial court must ensure the scope of discovery reflects this limitation. R.C. 2317.02(B)(3)(a); *Leopold* at ¶ 17.

{¶ **32**} Accordingly, we sustain appellant's three assignments of error to the extent indicated herein. The matter is remanded to the trial court to determine whether the records it ordered disclosed are causally or historically related to appellant's claimed injuries and to determine how to appropriately protect the information and records at issue in this case. *Randall* at ¶ 15, citing *Mason* ("[W]e recognize that the trial court is in the best position to determine the most appropriate method to protect privileged records in a particular case, but the court may not ignore the need to preserve the statutory physician-patient privilege."); *Mason* at ¶ 22 ("[W]e intend no intrusion upon a trial court's authority to determine the most appropriate method for protecting privileged medical records in a given case."). *See also Ward at* ¶ 32, citing Civ.R. 26(C) (finding that even if the physician-patient privilege does not apply, "the trial court must still consider whether the doctor is entitled to a protective order"). We express no opinion as to whether the requested information and records are casually and historically related to appellant's claimed injuries. *Randall* at ¶ 15.

IV.    **CONCLUSION**

{¶ **33**} Having sustained appellant's three assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand the matter for further proceedings consistent with this decision.

*Judgment reversed;*
*cause remanded.*

KLATT and BEATTY BLUNT, JJ., concur.

_____